JAMES L. ONSTOTT, Appellant, *vs.* A. M. OGLE *et al.* Appellees.

*Opinion filed April 23, 1908—Rehearing denied June 4, 1908.*

1. PARTNERSHIP—*when right of withdrawal is reserved by the contract.* A partnership agreement providing that if one partner wishes to retire from business at the end of any year the remaining partners shall return to him the cash he shall have paid to that date in part payment for his interest and return to him any unpaid notes given by him in part payment for such interest, reserves to such partner the right to withdraw at the end of any year, notwithstanding the agreement provides that the partnership shall continue for five years from its formation.

2. SAME—*withdrawal of partner works dissolution of partnership—accounting.* The withdrawal of a partner in accordance with the terms of the partnership agreement works a dissolution of the partnership and entitles him to an accounting, including a division of the profits up to the time of his withdrawal, notwithstanding the agreement provides that the partnership shall continue for a certain period of years and that if one partner withdraws the other partners will purchase his interest.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an appeal from the judgment of the Appellate Court for the First District reversing and remanding, with directions, a decree of the superior court of Cook county rendered upon a bill for an accounting among partners. James L. Onstott filed a bill for an accounting against his associates in business, and upon a hearing the superior court rendered a decree in his favor for $5568.48. Upon an appeal by the defendants below to the Appellate Court a judgment was rendered finding that Onstott was only entitled to $1257.28 due him on account of salary and money paid out for the firm. The judgment of the Appellate Court denied Onstott any right to an accounting or any interest in

the profits of the business which had been made while Onstott was a member of the firm.  By the judgment of the Appellate Court the decree below was reversed and the cause remanded, with directions to enter a decree in accordance with the views expressed by the Appellate Court.  The judgment of the Appellate Court being final, Onstott brings the case to this court by appeal.

The contract creating the co-partnership in question is set out in the bill.  The purpose of the co-partnership was to conduct a retail coal business in Chicago.  Comley Ogle, who had been the owner of a one-fourth interest in the business, disposed of his interest to other members of the firm.  James L. Onstott, complainant in the bill, had been the manager of the business for said firm.  Onstott and one Tandy desiring to become interested in the business, joined with A. M. Ogle and Willard W. Hubbard, and A. M. Ogle, trustee for the Island Coal Company, in the formation of a new co-partnership created by articles of agreement as follows:

"Therefore this agreement of partnership, entered into this first day of February, 1900, by and between A. M. Ogle, W. W. Hubbard, each owning a one-eighth interest in the said business; J. L. Onstott, owning a one-fourth interest in the said business; A. M. Ogle, trustee for the Island Coal Company, owning a one-fourth interest in the said business; and A. O. Tandy, owning a one-fourth interest in the said business.

"*Witnesseth:* The above parties agree to carry on a coal business at the corner of Maplewood avenue and Fulton street, Chicago, under the name of Ogle, Hubbard & Co., for a period of five years from July 1, 1899.  It is mutually agreed James L. Onstott shall be the manager of the said business so long as his services are satisfactory to the other parties in interest, at a salary which shall be determined as follows:  For the year ending May 1, 1900, said salary shall be $1000, and for the months of May and

June, 1900, said salary shall be $100 per month, and for each succeeding year after July 1, 1900, said salary shall be one-fifth of the net profits as determined by the annual statement made on the 30th day of June each year, but in no year shall said salary be less than $1200. * * * It is agreed by and between the parties hereto that if either said Onstott or Tandy wishes to retire from the business at the end of any year, the remaining partners will return to him the amount of cash he shall have paid in up to that date as part payment for said interest, and shall return to him any unpaid notes that he may have given in part payment for said interest, but no interest is to be paid upon the principal that he may have advanced for such purpose. It is also agreed that such notice of withdrawal must be made in writing to each of the other members of the firm at least ten days before the 30th of June, which shall be deemed to be the end of the business year. A list of the accounts and bills receivable and a list of the accounts and bills payable, as they were shown on the books of the company on June 1, 1899, are hereto attached to this agreement and made a part thereof.

"And it is mutually agreed between A. M. Ogle and W. W. Hubbard and the Island Coal Company, as one party hereto, and A. O. Tandy and J. L. Onstott as a party hereto, that the interests purchased by said Onstott and Tandy shall not suffer any loss by reason of the bills and accounts receivable and the cash on hand July 1, 1899, being less in value than the lists of bills and accounts payable July 1, 1899; and in the event that the collections of said bills and accounts receivable and cash on hand amount to a less amount than the bills and accounts payable, as aforesaid, the said Ogle and Hubbard and the Island Coal Company agree to reimburse said Tandy and said Onstott, each, to the extent of one-fourth of said deficiency, said reimbursement to be made on their final payment for their interests in said business and to be of date of July 1, 1899.

"On or before the 30th day of June of each year a careful inventory and statement of the business of the company for the preceding year shall be taken, and such part of the profits (if there are any) for the preceding year as may be agreed upon shall be divided between owners of said business in proportion to their holdings, and in case said inventory and statement should show loss for the preceding year, said loss shall be charged against each interest in like proportionate manner.  *  *  *

"The said A. M. Ogle, W. W. Hubbard, and A. M. Ogle, trustee for the Island Coal Company, hereby agree that they will not withdraw from this partnership during its existence without the consent of said A. O. Tandy and J. L. Onstott, so long as said Tandy and Onstott are members of the firm.

"This agreement supersedes, cancels and renders void any agreement of partnership heretofore entered into by and between any of the parties hereto.

"In witness whereof we have hereunto set our hands and seals this 1st day of February, 1900.

> A. M. OGLE,
> W. W. HUBBARD,
> J. L. ONSTOTT,
> ISLAND COAL CO.,
> By A. M. Ogle, *Trustee,*
> ALFRED O. TANDY."

In accordance with one of the provisions of the contract, James L. Onstott on June 9, 1903, served notice on the other members of the firm that he would withdraw from the firm on June 30, 1903. Pursuant to this notice Onstott withdrew from the firm on June 30, 1903, whereupon a dispute arose among the partners upon the question of the division of profits, and complainant filed this bill to compel an accounting.

GOODRICH, VINCENT & BRADLEY, (JOSEPH M. GRIFFEN, of counsel,) for appellant.

MUSGRAVE, VROMAN & LEE, and CHARLES E. BARRETT, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Appellant's contention is, that his action in withdrawing from the firm on June 30, 1903, amounted to a dissolution of the co-partnership, which he contends carries with it the right to an accounting, including the division of the profits to that date. Appellees insist that while he had the right to withdraw from the firm, yet his action in so doing did not amount to a dissolution of the co-partnership, and that because he withdrew before the expiration of the five-year period mentioned in the contract he lost his right to such participation in the profits.

We do not find it necessary at this time to determine whether one partner may voluntarily dissolve a partnership without cause when the right so to. do is not provided for in the contract. That right, we think, is clearly reserved in the contract here under consideration by the following clause: "It is agreed by and between the parties hereto that if either said Onstott or Tandy wishes to retire from the business at the end of any year, the remaining partners will return to him the amount of cash he shall have paid in up to that date as part payment for said interest, and shall return to him any unpaid notes that he may have given in part payment for said interest, but no interest is to be paid upon the principal that he may have advanced for such purpose. It is also agreed that such notice of withdrawal must be made in writing to each of the other members of the firm at least ten days before the 30th of June, which shall be deemed to be the end of the business year." It is admitted that Onstott complied with this provision in the contract by giving notice and exercising his right of withdrawal at the time specified. It is true, there was a provision that the partnership should continue for a period of five years, but we regard this as a limitation fixed for the du-

ration of the contract in case no one withdrew before the limitation expired. There are provisions in the contract whereby others might withdraw. It is obvious from the above stipulation that Onstott had the right, under the contract, to withdraw in the way and at the time that he did.

It is contended that the withdrawal of Onstott from the firm did not work a dissolution of the partnership. To this proposition we cannot agree. In *McCall* v. *Moss,* 112 Ill. 493, this court, in passing upon the case, used the following language (p. 501): "We understand the rule to be, that when one partner dies or sells his interest to another, or a new member is admitted by purchase of a portion of the capital owned by one or more members of the firm, such will, in law, work a dissolution of the firm. Parsons on Partnership (p. 406, sec. 1,) states the law as follows: 'It may now be considered as a settled rule of the law of partnership, in England and in this country, that the retirement of one partner from a firm consisting of any number of persons operates as a dissolution of that firm. * * * We suppose the truth to be, that if a partner retires, whether by voluntary act, bankruptcy, expulsion or death, or if a new partner comes in by any means whatever, in either of these cases the old partnership ceases to exist.' " (See, also, *Edens* v. *Williams,* 36 Ill. 252; and for a later case, *Pease* v. *Dawson,* 197 id. 340.) In this case the contract provided that in case Onstott chose to withdraw his interest was to be purchased by the other members of the firm. He did withdraw and they offered to purchase his said interest, proposing to pay therefor the amount specified in the contract. Onstott's withdrawal evidently dissolved the partnership, and the partnership being dissolved he was entitled to an accounting, and it was proper to include in the accounting a division of the profits up to June 30, 1903. The amount of the decree is not involved.

The judgment of the Appellate Court is reversed and the decree of the superior court of Cook county is affirmed.

*Judgment reversed.*